Ronald A. McIntire, State Bar No. 127407
RMcIntire@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.3277
Facsimile: 310.843.2872

Attorneys for Plaintiff
THE BOEING COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOEING COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 2:20-CV- 06601<br><br>**COMPLAINT** |

Plaintiff, The Boeing Company ("Boeing"), for its Complaint against Defendant, the United States of America, alleges and states as follows:

**INTRODUCTION**

1. This is a civil action under sections 107(a), 113(f), and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675.

2. Boeing seeks to recover from the federal government the necessary costs of response that it has incurred and will incur in a manner consistent with the National Contingency Plan ("NCP"), 40 C.F.R. 300, caused by the release or threatened release of hazardous substances at the aircraft manufacturing plant

formerly located at 19503 South Normandie Avenue, Torrance California (the "Site"), and their migration to the adjacent Montrose Chemical and Del Amo Dual Superfund Site (the "MDA Sites").

3. Boeing seeks to recover from the federal government Boeing's past and future response costs for investigating and remediating contamination at the Site, and for investigating and remediating certain hazardous substances that are alleged to have been released from the Site and migrated to the MDA Sites. Boeing is entitled to recover its response costs for addressing this contamination to the extent it is associated with the periods of time during which the federal government owned or operated the Site, or arranged for the disposal or treatment of hazardous substances at the Site.

**JURISDICTION AND VENUE**

4. This Court has exclusive jurisdiction over this action pursuant to section 113(b) of CERCLA, 42 U.S.C. § 9613(b). In addition, the Declaratory Judgment Act, 28 U.S.C. § 2201, and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorize this Court to grant Boeing's request for declaratory relief.

5. Venue in this Court is proper pursuant to section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the federal government may be found in this District and the alleged releases of hazardous substances occurred in this District.

**PARTIES**

6. Plaintiff Boeing is a corporation duly formed under the laws of the State of Delaware, with its headquarters in the State of Illinois. Boeing is a successor in interest to McDonnell Douglas Corporation ("MDC") which, in turn, is a successor in interest to Douglas Aircraft Company ("DAC"). Boeing, MDC, and DAC are hereinafter collectively referred to as Boeing.

7. Defendant United States includes all relevant agencies of the federal government, including the Department of Defense, Department of the Air Force,

Department of the Army, Department of the Navy, Department of Commerce, Army Corps of Engineers, General Services Administration, and all other departments, agencies, and instrumentalities of the federal government.

## FACTUAL BACKGROUND

**A.   The Site**

8.   The Site includes the plants and areas formerly designated or commonly referred to as Boeing's C-6 Plant or Plancor 226, and all associated facilities, including all associated disposal areas.

9.   Under various government contracts dated from the 1950s through the early 1990s, Boeing manufactured and/or assembled aircraft parts and components and missile components and equipment for the United States military at the Site.

10.   During the federal government's ownership and operation of facilities at the Site from the 1950s through 1970, when Boeing was manufacturing and/or assembling military aircraft components and other military hardware in support of the national defense, hazardous substances, including volatile organic compounds ("VOCs"), were released to the environment, resulting in contamination of soil and groundwater in and around the Site.

**B.   The Federal Government's Involvement at the Site**

11.   Soon after the start of the Korean War, in 1952, the Navy condemned the real property at the Site and acquired an already-constructed plant from a third party, after which it leased the property to Boeing and contracted with Boeing to convert and modernize the plant and install machinery and equipment to manufacture aircraft components for naval aircraft, and other military hardware.

12.   From that time through 1970, the federal government owned all of the land and buildings and equipment and machinery (including vapor degreasers at the Site) and land improvements (including storm drains and sanitary sewers).  Under

1   its lease, Boeing had a limited right to make alterations and improvements to the
2   Site, but those alterations and improvements required the prior written consent of
3   the Navy.  Moreover, any major alterations and improvements to the Site
4   automatically became the property of the government.  The Site during this time
5   was known as a Naval Weapons Industrial Reserve Plant.
6          13.    In 1970, the United States sold the land, buildings, equipment, and
7   machinery making up the Site to Boeing. Boeing was still manufacturing military
8   aircraft components and equipment at the time, and continued to do so (along with
9   commercial aircraft components) through the early 1990s.
10         14.    From at least 1952, the federal government exercised pervasive
11  supervision over operations at the Site and was actively involved in manufacturing
12  activities, including the exercise of engineering coordination and control through
13  stages of production and service use, and requirements on the chemical materials to
14  be used for aircraft component manufacturing, including the chemicals to be used
15  for cleaning.
16         15.    The federal government specified how military aircraft parts and
17  components would be manufactured and maintained and what hazardous substances
18  would be used during such manufacturing processes.
19         16.    The federal government knew waste generation was inherent in the
20  military aircraft manufacturing processes conducted at the Site.
21         17.    The federal government owned the waste products generated during
22  the Site's manufacturing processes.
23         18.    The federal government owned, reviewed, and approved of the means
24  of waste disposal at and from the Site.
25         19.    The federal government controlled both the production and waste-
26  handling processes at the Site through regulations, contractual requirements,
27  military specifications, and on-site inspections by Bureau of Aeronautics
28  representatives who actively supervised operations at the Site.

20. Military aircraft parts and components were manufactured at the Site for the federal government pursuant to supply contracts entered into by Boeing and the federal government.

21. Pursuant to these supply contracts, the federal government owned all of the hazardous substances that were purchased for and used to fulfill the contracts.

22. The federal government continued to own these hazardous substances throughout the military aircraft parts and components manufacturing processes.

23. Waste was created when hazardous substances were used to manufacture military aircraft parts and components at the Site.

24. Pursuant to the supply contracts, the federal government owned the waste that was created when these hazardous substances were used for the manufacture of military aircraft parts and components at the Site.

25. By entering into these supply contracts, the federal government intended for Boeing to dispose of the waste that was created when hazardous substances were used for the manufacture of military aircraft parts and components at the Site.

26. Through its ownership, review, and approval of all of these means of waste management, the federal government intended to dispose of waste from the Site, and it intended for Boeing to dispose of waste on behalf of the federal government.

**C.    The MDA Sites**

27. Releases of hazardous substances occurred at the MDA Sites from the former Montrose pesticide manufacturing plant and the former synthetic rubber manufacturing plant.  In addition, releases of hazardous substances potentially migrated to the MDA Sites as a result of operations of additional facilities in the area surrounding the MDA Sites.

28. The decision by EPA on the remedy to be implemented at the MDA Sites is embodied in a final Record of Decision executed on March 31, 1999. In 2011, Boeing and other parties received a special notice letter from the United States Environmental Protection Agency regarding the groundwater operable unit of the MDA Sites.

29. During the federal government's ownership or operation of facilities at the Site, where military aircraft parts and components were manufactured in support of the national defense, certain hazardous substances were released from the Site and thereafter may have migrated to the MDA Sites.

**D. Boeing Has Incurred and Will Continue to Incur Response Costs at the Site and the MDA Sites**

30. To investigate, reduce, clean up, or eliminate contamination at the Site, Boeing has performed various actions under the oversight of the Los Angeles Regional Water Quality Control Board and the California Department of Toxic Substances Control, including, but not limited to, investigating the nature and extent of contamination, analyzing remediation alternatives, and identifying and eliminating potential ongoing sources of contamination through interim measures.

31. Boeing has incurred response costs to investigate and remediate contamination at the Site. Boeing will continue to incur response costs in the future.

32. Boeing's response costs at the Site are necessary to address a threat to human health or the environment. They are also consistent with the National Contingency Plan ("NCP").

33. Boeing has incurred some response costs to investigate certain hazardous substances at the MDA Sites that may have migrated from the Site. Boeing will incur response costs in the future relating further investigation and remediation of certain hazardous substances at the MDA Sites that may have migrated from the Site.

**FIRST CLAIM FOR RELIEF:**
**COST RECOVERY AND, IN THE ALTERNATIVE, CONTRIBUTION**
**BASED ON THE FEDERAL GOVERNMENT'S LIABILITY**
**UNDER CERCLA**

34. Boeing repeats and realleges paragraphs 1 through 33 above, as though fully set forth herein.

35. Boeing has incurred necessary costs of response incurred in a manner consistent with the NCP under section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), to remediate VOCs and other hazardous substances at the Site.

36. The federal government (a) owned land, land improvements, buildings, equipment, machinery, and other facilities at the Site at the time hazardous substances were disposed of and otherwise released at the Site; (b) had the authority to and/or did in fact manage, direct, or otherwise control operations at the Site, including operations specifically related to the acquisition, storage, use, and disposal of hazardous substances; and/or (c) arranged for the disposal or treatment of hazardous substances at the Site by contract, agreement, or otherwise. The federal government therefore is a person within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

37. Pursuant to sections 107(a)(4)(B) and 113(f)(1) and (f)(3)(B) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B), 9613(f)(1), 9613(f)(3)(B), Boeing is entitled to cost recovery and, in the alternative, contribution, from the federal government for response costs incurred in connection with the Site and certain hazardous substances that may have migrated from the Site to the MDA Sites. Response costs incurred by Boeing or for which Boeing may be deemed liable should be equitably allocated to the federal government based on such equitable factors as this Court determines are appropriate.

38. Boeing is entitled to pre and post-judgment interest on the amount recovered under this claim pursuant to section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

**SECOND CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT OF THE FEDERAL GOVERNMENT'S LIABILITY FOR RESPONSE COSTS UNDER CERCLA**

39. Boeing repeats and realleges paragraphs 1 through 38 above, as though fully set forth herein.

40. This is a claim for declaratory judgment under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201. Within the meaning of those statutes, an actual and substantial controversy exists between Boeing and the federal government regarding their respective rights and obligations related to response costs that have been and will be incurred to investigate and remediate contamination at the Site and certain hazardous substances that may have migrated from the Site to the MDA Sites.

41. Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Boeing is entitled to a declaratory judgment that the federal government is liable to Boeing for the response costs incurred and to be incurred in the future, together with pre and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Boeing demands judgment in its favor and against Defendant United States as follows:

1. As to the first claim for relief, for recovery of the United States' equitable share of past response costs consistent with the NCP, including recoverable attorneys' fees, incurred by Boeing at the Site and in connection with releases of certain hazardous substances from the Site that may have migrated to MDA;

2. As to the second claim for relief, for a judicial declaration that the federal government is liable for future response costs consistent with the NCP incurred by Boeing at the Site and in connection with releases of certain hazardous substances from the Site that may have migrated to MDA;

3. As to all claims for relief, for pre and post-judgment interest on response costs incurred and to be incurred by Boeing; and

4. As to all claims for relief, for all costs and expenses incurred in this action, to the extent provided for by law, and such other and further relief as this Court may deem just and proper.

DATED: July 24, 2020

**PERKINS COIE LLP**

By: */s/ Ronald A. McIntire*
Ronald A. McIntire
RMcIntire@perkinscoie.com
1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.3277
Facsimile: 310.843.2872

Attorneys for Plaintiff
The Boeing Company